1  Karen Purvis

2  Specialist Abdirahman Guleed
   U.S. ARMY

3
   Karen Purvis, Guardian ad litem
4  For Romello Purvis, minor

5  P.O. Box 60594
   Palo Alto, CA 94306
6  (650)518-1960

7  *Pro Se,*

   Plaintiffs,
8

9

10

       **UNITED STATES DISTRICT COURT**
11     **NORTHERN DISTRICT OF CALIFORNIA**
           **SAN JOSE DIVISION**
12

13 KAREN PURVIS and SPECIALIST          )   Case No. **CV 12-00256**
14 ABDIRAHMAN GULEED,KAREN PURVIS       )
   Guardian et litem for Romello        )
15 Purvis,                              )
                                        )   COMPLAINT
16           Plaintiff,                 )
                                        )   **DEMAND FOR JURY TRIAL**
17      vs.                             )
                                        )
18                                      )
   TERMAN APARTMENTS and Goldrich       )
19 & Kest Industries, LLc               )
   MANAGEMENT,TATANYA MENDYUK and
20 YEFIM MENDYUK, DENA ASHBROUGH,
   and DOES 1-100
21           Defendants
   UNITED STATES DEPARTMENT OF
22 HOUSING URBAN DEVELOPMENT
   (HUD);THOMAS AZUMBRADO, in his
23 capacity as Director of San
   Francisco Multifamily Hub, and
24 Does 1-100
25           Defendants

26

27

28

                 CIVIL COMPLAINT- 1

1

2                        **I. JURISDICTION AND VENUE**

3    1. This court is vested with jurisdiction under 28 U.S.C. 1331

4    and 1345 and 42 concerning federal questions arising under the

5    Constitution and laws of the United States, and The Service

6    Member Civil Relief Act.

7    Venue is proper under 28 U.S.C 1391 the property located in The

8    City of Palo, the County of Santa Clara.

9                     **II.   SUPPLEMENTAL JURISDICTION**

10   2. 28 U.S.C. § 1367: US Code-Section 1367: Supplemental

11   jurisdiction: Supplemental Jurisdiction under Federal Statute,

12   in any civil action of which the federal district courts have

13   original jurisdiction, the district courts shall have

14   supplemental jurisdiction over all other claims that are related

15   to the claims in the actions within such original jurisdiction

16   that they form part of the same case, and controversy under

17   Article III of the United States Constitution. Such supplemental

18   jurisdiction shall include claims that involve the jointer or

19   intervention of additional parties.

20                      **III. JURISDICTIONAL ISSUES**

21   3. Jurisdictional issues may arise when a tenant files in a

22   Federal District Court, after a judgment for possession has been

23   entered in a state court. Courts in the Ninth Circuit held that

24   Federal District Courts have exclusive jurisdiction to determine

25   whether a state court judgment is preclusive under collateral

26   estoppels principles.  See Westside Apartments, LLC v Butler (In

27   re Butler) (Bankr CD Cal 2002) 271 BR 867, however, a Federal

28   District Court held that §715.050 are preempted by federal law

     and therefore unconstitutional. It also held that a Plaintiff's

                          CIVIL COMPLAINT- 2

1    equitable possessory interest, which the court recognized to

2    exist even after entry of judgment in the unlawful detainer

3    action, may be asserted as property of the estate subject to

4    protection under the stay. There is an Appeal on file of the

5    judgment, and the tenant landlord case at the Superior Court of

6    Appeals. **(See attachment Exhibit 24)**

7                      **IV. CAUSES OF ACTION:**

8         1. Housing Discrimination of Federally Subsidized Property

9         to include increased rent of over 500%;

10         2. Violation of "The Service Member Civil Relief Act";

11         3. Assualt and Battery on a minor;

12         4. Defamation of Character;

13         5. Negligence;

14         6. Long Time Exposure to Mold and Sevier Gas Leak;

15         7. Intentional Infliction of Emotional Distress.

16                       **V. COMPLAINT**

17    4. This action is brought by Karen Purvis, plaintiff and

18    Specialist Abdirahman Guleed, U.S. Army, plaintiff; Karen

19    Purvis, Guardian et litem for Romello Purvis, to the following

20    actions to be enforced by this UNITED STATES DISTRICT COURT

21    NORTHERN DISTRICT OF CALIFORNIA SAN JOSE DIVISION. I come before

22    this court to implement my rights as an American Citizen of this

23    United States of America.

24    Plaintiffs have been denied housing base on the discrimination

25    of Terman Apartments, and G&K Management. I will be filing a

26    housing discrimination with the Department of Employment and

27    Housing Agency, (DEFH). *(See attached Exhibit 1)*

28    5. I sought all lower agencies for assistance and was denied

     including City of Palo Alto agencies, county agencies, HUD Fair

1  Housing complaint process, and the State of California agencies,
2  all denied me the assistance although funds were available under
3  The American Recovery and Reinvestment Act of 2009.
4  I come before this court as a pro se litigant, I searched for an
5  attorney in this matter and the other matters in the superior
6  court, and to my dismay I found that attorney's are not held to
7  any standards and are looking for large sums of money to assist
8  citizens for the strife for Justice. This is not my choice to
9  seek justice as a pro se litigant, but for now I must proceed
10 with this course of action; to seek justice that is protected by
11 the Civil Rights Act, The United States Constitution, The Ralph
12 Civil Rights Act- Bane Civil Rights Act (civil code 52.1), The
13 Fair Housing Act, California State Constitution "protected
14 citizens" "federal statutes" 14th amendment, Acts; URICH, other
15 disability and housing Acts. The facts of this case involving
16 the interpretation, and the application of the U.S. Constitution
17 to include the 14th Amendment Rights.

18                      **VI. FACTUAL BACKGROUND**

19 6. Plaintiff and her two sons at that time ages twelve (12) and
20 twenty-six (26)received rental assistant from the United States
21 Department of Housing and Urban Development ("HUD") a project
22 based section 8, a federally subsidized complex unit she lived
23 in for twenty three years (23)which G&K Management has received
24 payments.

25 7. Plaintiffs' son Abdirahman H. Guleed enlisted was added to
26 the lease when he turned eighteen (18) years of age as a
27 requirement of the U.S. Department of housing and Urban
28 Development ("HUD") program policy that adult/spouse members to

1  be listed on the lease as a Co-head of household. *(See attached*
2  *Exhibit 2)*
3  8. Plaintiffs' son Abdirahman Guleed enlisted in the military
4  and was given an enlist date of June 9, 2007 at which point he
5  notified Tatyana Mendyuk the property manager for G&K
6  Management. *(See attached Exhibit 3)* PVT Abdirahman Guleed
7  completed basic training in "Atlanta, GA.
8  Plaintiffs' son returned home in 2008 from basic training and
9  signed the lease re-certification documents before returning to
10 active duty. Tatyana Mendyuk illegally removed Abdirahman Guleed
11 from the lease as co-head of household after he returned to
12 active duty in 2008.
13 9. Karen Purvis, plaintiff received a notice with attachments on
14 or around May 20, 2008 from the Internal Revenue Service
15 ("IRS"). Apparently, Tatyana Mendyuk unlawfully tried to access
16 Karen Purvis, plaintiff tax returns using a 4506 form and
17 attached an outdated authorization from the 2007 without
18 plaintiffs' consent or knowledge. *(See attached Exhibit*
19 *4)*Plaintiff notified the IRS and Tatyana Mendyuk about her
20 fraudulent behavior and was instructed by the IRS Fraud Division
21 to lodge a complaint against Tatyana Mendyuk.
22 10. During the August 11, 2008 re-certification which plaintiff
23 received documents through discovery, noticed that the **"move-in**
24 **annual re-certification checklist"** contained the **fraudulent**
25 signature of Karen Purvis, plaintiff. It is upon information and
26 belief that Tatyana Mendyuk signed this document without consent
27 or knowledge of Karen Purvis, plaintiff. *(See attached Exhibit*
28 *5)* Plaintiff would like the Court to take judicial notice that
   Tatyana Mendyuk *forged* the plaintiffs' signature on the re-

1  certification 2008 and committed other acts of fraud. This is a
2  violation of The Federal Privacy Act, 5 United States Code
3  (U.S.C.) § 552a (e); the federal right to Financial Privacy Act,
4  12 U.S.C. §§ 3401, et seq.; the National Housing Act as amended,
5  42 U.S.C. §§ 1437, et seq.; and the rights to privacy guaranteed
6  by the United States and California Constitution. This began the
7  onset of the plaintiff's harassment and bias treatment from the
8  property manager Tatyana Mendyuk. Tatyana Mendyuk first began
9  removing plaintiffs son from the lease as co-head of household
10 while he was on active duty *(See attached Exhibit 6)* Tatyana
11 Mendyuk, Yefim Mendyuk  and G & K Management continued to harass
12 the plaintiffs; Karen Purvis, Abdirahman Guleed, and Romello
13 Purvis. Plaintiff Karen Purvis received notice from Kasey
14 Archey, who is Vice President for G & K Management, The notice
15 stated that her family composition had changed and she would
16 have to move to a two (2) bedroom unit. *(See attached Exhibit*
17 *7)*Plaintiff responded, on February 18, 2009 to the notice
18 stating that her family household size had not changed. *(See*
19 *attached Exhibit 8)* Plaintiff received another notice dated
20 February 18, 2009 taped to her door from Tatyana Mendyuk stating
21 that her family household size had changed and she would have to
22 move into a one (1) bedroom unit. *(See attached Exhibit 9)* The
23 notice is a violation of HUD guideline 4350.3, Rev-1 that states
24 that the tenant has 30 days to move. The notice only gives
25 plaintiff's seven days to move rather than the required 30 days.
26 The plaintiff received a notice dated March 2, 2009 stating that
27 she was being transferred to unit 1-102 on the second floor.*(See*
28 *attached Exhibit 10)* Plaintiff received a 10 day notice dated
   March 10, 2009 stating that her subsidized rent would increase

1 || to market rate rent in the amount of $2,018. *(See attached* ·
2 || *Exhibit 11)* Plaintiff tried to met with the resident manager to
3 || resolve the issues about her son, the rental increase, and the
4 || one-bedroom (familiar status 12 year old son), but to no avail
5 || Tatyana Mendyuk came up habitual excuses why she could not met
6 || with the plaintiff, The Plaintiff presented Tatyana Mendyuk with
7 || the same notice the tenant in apartment 1-110 was given to move
8 || from her three (3) bedroom unit into a two (2) bedroom unit and
9 || then was effectively allowed to stay in her three (3) bedroom
10 || unit because of the washer and dryer. Then Tatyana Mendyuk
11 || became infuriated and asked the plaintiff to leave her office
12 || immediately. *(see attached Exhibit 12)* Plaintiff then received
13 || three (3) more 10 day notices dated April 28, 2009, and June 8,
14 || 2009. *(See attached Exhibit 13)* Plaintiff became frantic and
15 || sent a message through the military to reach her son. Plaintiff
16 || explained to her son as to what was going on and he told the
17 || Plaintiff to contact the reservist office to get help. Plaintiff
18 || contacted her sons' reservist office and was referred to the
19 || United States Department of Transportation of the United States
20 || Coast Guard Legal Service Command. Plaintiff explained to them
21 || what was going on and the Attorney of the U.S. Coast Guard
22 || promptly advised Plaintiff that HUD and G & K Management were in
23 || violation of the Servicemembers Civil Relief Act (SCRA), and
24 || they were prohibited from removing Plaintiff's son from the
25 || lease and the remaining family members to a smaller unit as well
26 || as the significant increase in her subsidized rent. The Attorney
27 || of the U.S. Coast Guard sent the U.S. Department of Housing and
28 || Urban Development, and G & K Management a letter dated July 2,
2009. *(See attached Exhibit 14)*

11. Plaintiff received another 10 day notice dated July 8, 2009 from G & K Management completely ignoring the warning from the military of the violation of the Servicemembers Civil Relief Act. *(See attached Exhibit 15)* Plaintiff received a 10 day notice dated August 6, 2009 from G & K Management. *(See attached Exhibit 16)* Plaintiff received notice the August 6, 2009 that the 10 day notice was canceled. *(See attach Exhibit 17)* This establishes a pattern of the harassment. Plaintiff assumed that after receiving the August 6, 2009 notice canceling the 10 day notice that she did not need to pay the market rate rent of $2,018. Plaintiff received another 10 day notice dated August 10, 2009. *(See attached Exhibit 18)* Defendants' continued the harassment and continued with their eviction against Plaintiff despite warning from the military not to do so. Plaintiff hired attorney Monique Doryland to represent her in this matter. There was a flaw in that representation, and the attorney Monique Doryland negotiated to move Plaintiff into a smaller unit and Brian Rosales sent confirmation of the agreement dated September 30, 2009. *(See attached Exhibit 19)* As part of the agreement Plaintiff was to move into a downstairs unit with a washer and dryer due to her disabilities as documented through the Palo Alto Medical Foundation in which G & K management is in receipt of those letters dated June 29, 2009, October 22, 2009 and December 7, 2009. *(See attached Exhibit 20)* Due to the fact that G & K management was unwilling to make Reasonable Accommodations the Plaintiff and negotiations broke down. G & K Management proceeded to evict Plaintiff through State Superior Court in an unlawful detainer action. Plaintiff suffered a financial hardship when she was forced to pay the market rent in

1  the amount of $2119.00 in June 2009 and $2101.00 in July 2009
2  which Plaintiff borrowed and is obligated to pay back a friend
3  and her church that lent her the funds to pay her rent to stop
4  her from being put out onto the street with her twelve (12) year
5  old son, and to become homeless. *(See attached Exhibit 21)*
6  Plaintiff was advice by the military to pay her subsidized rent
7  in the amount of $220.00.  Plaintiff has paid the following
8  amounts $220.00 on August 5, 2009, $220.00 on September 5, 2009,
9  $220.00 on October 5, 2009, $220.00 on November 5, 2009, $220.00
10 on December 5, 2009, $220.00 on January 5, 2010, $235.00 on
11 February 12, 2010, $220.00 on March 5, 2010 and $220.00 on April
12 5, 2010. (See attached Exhibit 22)   G & K Management has
13 returned all of the above subsidized rent payments un-cashed via
14 certified mail.

15 12. G & K Management has violated U.S. Department of Housing and
16 Urban Development (HUD) program guidelines for the sole purpose
17 to harass and intimidate the Plaintiff and forced her to file
18 bankruptcy for all other obligations to her creditors. G & K
19 Management was warned to cease, and desist their discriminatory
20 and illegal practice by the military.  Plaintiff has lodged a
21 complaint against G & K management with the U.S. Department of
22 Housing and Urban Development (HUD) and they are currently
23 conducting an investigation:

24     Title VI of the 1964 Civil Rights Act Section 504 of the
25     1973 Rehabilitation Act, Section 804 (a) (f), 818, and 804
26     (f) (3) B of Title VIII of the Civil Rights Act of 1968 as
27     amended by the Fair Housing Act of 1988, and the types of

28

1    Federal Funds identified; HUD Assisted Housing (202, 811,

2    221D4, Project Based Section 8).

3    13. Evicting the tenant because of the landlord's bad act would

4    be inconsistent with the federal regulatory provision and

5    California's implied warranty of habitability.

6

7                **VII. MEMORANDUM OF POINTS AND AUTHORITY**

8    14. Tenants evicted from federally assisted housing face well-

9    known serious disruptions in family life and serious

10   consequences from a government- subsidized housing. See, e.g.,

11   Caraminco v Secretary of HUD (2d Cir 1974) 509 F2d 694. The fair

12   housing Amendments Act of 1988 (Pub L 100-430, 102 Stat 1619)

13   broadens the anti-discrimination provisions of the Fair Housing

14   Act of 1968 (43 USC§§3601-3631) by prohibiting discrimination

15   based on disability or familiar status, and significantly

16   affects California's housing discrimination laws. The amendments

17   also require that a landlord make Reasonable Accommodations when

18   a tenant is disabled.  G & K Management has discriminated

19   against Plaintiff by failing to accommodate her disabilities.

20           **VIII. VIOLATION OF THE RIGHT TO A GRIEVANCE HEARING**

21   15. Public housing tenants have the most extensive procedural

22   protections. Federal statutes and regulation require informal

23   and formal grievance hearings See §18.22. See 42 USC§1437d (k);

24   24 CFR§§966.50-966.57.  Many courts have found that the federal

25   regulations are binding on a landlord and that an eviction may

26   be set aside for failure to follow them.  Dial v Star City Pub.

27   Housing. Auth. (Ark Ct App 1983) 648 SW2d 806 (PHA eviction set

28   aside because tenant was not given informal grievance hearing.

HUD regulations provide that a tenant must be offered a
grievance hearing and the opportunity to enter into a written
agreement. Each termination notice must state the tenant has
right to examine any documents directly related to the eviction
and the right to a grievance hearings 42 USC§1437d (l) (7); 24
CFR §966.4(l) (3) (ii).  None of the notice received by
Plaintiff from G & K Management included any information
regarding Plaintiff's rights to a grievance hearing which is a
violation of 42 USC§1437d(l)(7); 24 CFR §966.4(l)(3)(ii)
whereby, Plaintiff asserts service of  the termination  notices
she received were all defective.   Prior to G & K Management and
the Terman Apartments initiating the unlawful detainer action in
state court  against Plaintiff, they failed to offer Plaintiff a
grievance hearing whereby violating her rights under the due
process of law. HUD ruled that California unlawful detainer
actions (defined in CCP §1161) in superior court must meet the
due process requirements. See 61 Fed. Reg. 13276 (Mar. 26,
1996). See also 24 CFR §966.519(a)(2)(ii)(iii).

16. Plaintiff contends that her rights under the due process of
the law were violated when the Superior Court for the State of
California, County of Santa Clara refused to allow Plaintiff to
admit any evidence in to record and the right to oral argument
at trial whereby effectively wiping out her rights to a fair and
impartial  hearing.  The pre-termination grievance hearing,
which is preceded by an informal conference, must afford the
tenant the following procedural rights (24 CFR§966.56(b)):

   a) The right before the hearing to inspect and copy all
        relevant housing authority records and documents.

b) The right to be represented by counsel or other
   representative;

c) The right to a private hearing;

d) The right to present evidence and arguments, to rebut
   contrary evidence, and to cross-examine adverse witnesses;

e) The right to a decision based solely on the facts presented
   at the hearing; and

f) The right to arrange for a transcript of the hearing.

17. Plaintiff was not allowed any procedural rights in wrongful eviction was she not allowed to meet the landlord to discuss the proposed termination of tendency or the right to resolve the dispute regarding the lease. HUD program handbook 4350.3, chap 8, §3 the courts can invalidated evictions in which public housing has failed to follow its own rules. Mays-Watt v Hernandez (Sup Ct 2003) 763 NYS2d 707, 711

## IX. SUBSIDIZED RENT PAYMENTS PENDING EVICTION

18. Pursuant to 24 CFR §966.55(e) Plaintiff is required to pay rent into an escrow account before a hearing will be scheduled in a grievance involving the rent. G & K management has violated 24 CFR §966.55(e) when they failed to deposit Plaintiff's rent payments into an escrow account and schedule a grievance. Plaintiff would like the court to take judicial notice that Mr. Rosales has committed fraud upon the court as stated in his motion to stay on page 2, para 5, lines14-20. A Mr. Rosales claim the Plaintiff has not made any rent payments, and has deprived his clients to income and profit is simply an untruth. G & K Management can file a claim for vacancy losses with HUD which they will compensate the property owner for the loss of

1 rental income of a unit that was previously occupied by an
2 assisted tenant and where the unit has been vacant for
3 circumstances beyond the owner's control. Who may bill HUD for
4 vacancy losses? Owners may file a vacancy loss claim for
5 Section 8, Section 202/8, Section 202 PAC, Section 202 PRAC, and
6 Section 811 PRAC units. Upon learning of a vacancy, the move-
7 out data must be transmitted to TRACS. The former tenant must
8 have been receiving rental assistance at move-out, or if the
9 rental assistance had been terminated prior to move-out, the
10 assistance was terminated based upon the tenant's failure to
11 comply with his/her responsibilities to fulfill program
12 requirements. So either way whether Plaintiff is living in the
13 unit or moves out G & K management will not incur any loss of
14 income.

15                        **X. HUD HEAD OF HOUSEHOLD AND**

16              **CO- HEAD HOUSEHOLD AND ADULT FAMILY MEMBERS**

17 19. 3-I.E. SPOUSE, COHEAD, AND OTHER ADULT A family may have a
18 spouse or co-head, but not both [HUD-50058 IB, p. 13]. Spouse
19 means the marriage partner of the head of household. BHHC Policy
20 A co-head is an individual in the household who is equally
21 responsible with the head of household for ensuring that the
22 family fulfills all of its responsibilities under the program,
23 but who is not a spouse. Pursuant to HUD lease requirements
24 which states all adults living in the units over age of eighteen
25 (18) are required to sign the lease as co-head of household.
26 Plaintiff's son has been a co-head of household member since the
27 age of eighteen (18) years. Pursuant to HUD regulations, G & K
28 management was required to note in Plaintiff's file that her son
was in the military and when they were unable to obtain his

1  signature for the re-certification. HUD requires owner to sign
2  and obtain the signature of the head, spouse, co-head, and all
3  adult family members on the copy of the HUD-50059 certifying to
4  the information that is transmitted to HUD.   HUD further
5  required that G & K management consider extenuating
6  circumstances when an adult family member is not available to
7  sign the HUD-50059, for example, an adult serving in the
8  military, students away at college, adults who are hospitalized
9  for an extended period of time, or a family member who is
10 permanently confined to a nursing
11 home or hospital.   In these instances, the owner must document
12 the file why the signature(s) was not obtained and, if
13 applicable, when the signature(s) will be obtained.   G & K
14 Management did not have the authority through HUD program
15 guidelines to remove Plaintiff's son from the lease while on
16 active duty.   G & k management did not have the authority to
17 change the family household size unless they received notice of
18 such a change which they did not. Nobody moved in or out of the
19 Plaintiff's unit nor did Plaintiff's son send the management a
20 30 day written notice that he had moved out.   Pursuant to the
21 lease in Paragraph 23 "termination of tenancy" states: To terminate this agreement,
22 the tenant must give the landlord 30-days written notice before moving from the unit."

23

24 **XI.  SERVICEMEMBERS RELIEF ACT**

25 20. The Act's purposes are to enable Service Members to devote
26 their entire energy to the defense needs of the Nation; and to
27 provide for the temporary suspension of judicial and
28 administrative proceedings and transactions that may adversely

affect the civil rights of Service Members during their military

service SCRA 50 U.S.C. App. § 502.

Pursuant to SCRA 50 U.S.C. App. § 511, covered Servicemembers

Civil Relief Act ("SCRA") include those members of the Army,

Navy, Air Force, Marine Corps and Coast Guard on active duty

under 10 U.S.C. 101(d) (1); Members of the National Guard who

are called to active duty as authorized by the President or the

Secretary of Defense for over 30 consecutive days under 32

U.S.C. 502(f) to respond to a national emergency declared by the

President and supported by federal funds. 50 U.S.C. App. § 521

governs when the Service Member has made no appearance.

When a judgment, order or adverse ruling is sought against a

party who has not made an appearance, it is the duty of the

Department of Justice (DOJ) to determine whether that party is

in the military. The SCRA states that either side or the court

may apply for information as to military service to the

Department of Defense (DOD), which must issue a statement as to

military service 50 U.S.C. App. § 582. There may be a defense to

the action and a defense cannot be presented without the

presence of the Service Member, or after due diligence, counsel

has been unable to contact the Service Member or otherwise

determine if a meritorious defense exists. If a judgment has

been entered against the Service Member during his period of

military service (or within 60 days after the end of service),

the court must reopen the judgment to allow the Service Member

to defend if: he was materially affected due to military service

in asserting a defense, and he has a meritorious or legal

defense to the action or some part of it, so long as the

application is filed within 90 days after the end of military

service. 50 U.S.C. App. § 521(g).

21. When the Service Member has received notice of the action or proceeding and has filed an application for a stay (including an application filed within 90 days after the end of military service), 50 U.S.C. App. § 522 states that the court may (upon its own motion) and shall (upon the application of a Service Member) enter a stay of proceedings for at least 90 days if the motion includes the information required by the statute for the court to determine whether a stay is needed.

22. A request for a stay does not constitute an appearance for jurisdictional purposes or a waiver of any defense, substantive or procedural. 50 U.S.C. App. §522(c). The Service Member may request an additional stay based on the continuing effect of his military duty on his ability to appear. He may make this request at the time of his initial request or later on, when it appears that he is unavailable to defend or prosecute. Plaintiffs file an affidavit in state court staying the proceeding and the court simply ignored the affidavit. **(See attached Exhibit 23)** The same information as given above is required. SCRA 50 U.S.C. App. § 522(d) (1). If the court refuses an additional stay, then the court must appoint an attorney to represent the SM in the action or proceeding. SCRA 50 U.S.C. App. § 522(d) (2). State court never appointed Plaintiff's son a attorney to represent him in the eviction and proceed to enter an erroneous judgment. If the court fails to appoint an attorney, then the judgment or decree is voidable. SCRA 50 U.S.C. App. § 521(b)(2). G & K management knew they could not evict the Plaintiff unless they remove her son from the lease who was protected under the Servicemembers Civil Relief Act.

23. G & K management was told by the military that they were prohibited from removing the Plaintiff's son from the lease as well as evicting the family. Clinton Cotton Mills v U.S., C.C.A.4 (S.C.) 1947 F.2d 173 Armed Services← 34.6

## XII. DAMAGES MAY BE AWARDED FOR WRONGFUL
## EVICTION FROM FEDERALLY ASSISTED HOUSING

24. Tenants in government-assisted project-based section 8 subsidized housing have been successful in collecting damages, and attorney's fees for wrongful eviction (including evictions that were wrongful because they failed to follow the federal regulations). See Jones v Orange Hous. Auth. (D NJ 1983) 559 F Supp. 1379 (attorney fees awarded under 42 USC §1988); Goler Metro. Apartments, Inc. v Williams (NC Ct App 1979) 260 SE2d 146 ( damages awarded under state law); Holyoke Hous. Auth. V Pych (Mass Hous Ct, July 18, 1985, No. SP 6107-H85 to 6109- H85) (attorney fees and damage. Pro Se litigants were granted attorneys fees. (Hersh & Hersh v. HHS, No. 06-4234, 2008 WL 2725497, at *1 (N.D. Cal. July 10, 2008) ("If a plaintiff demonstrates eligibility for fees, the district Court may then, in the exercise of its discretion, determine that the plaintiff is entitled to an award of fees and costs.").; See also Allen, 716 F. Supp. at 671 (suggesting that interim fee awards should be made only in unusual case of protracted litigation and financial hardship.;(Albino, 2002 WL 32345674, at *1 (awarding costs because pro se plaintiff substantially prevailed.) Pursuant to the provisions of the Military Selective Service Act (50 U.S.C. App. 451 et seq.) section (c) Penalties:

1  (1) Misdemeanor Except as provided in subsection (a), a person
2  who knowingly takes part in an eviction or distress described in
3  subsection (a), or who knowingly attempts to do so,
4  shall be fined as provided in title 18, United States Code, or
5  imprisoned for not more than one year, or both. (2) Preservation
6  of other remedies and rights The remedies and rights provided
7  under this section are in addition to and do not preclude any
8  remedy for wrongful conversion (or wrongful eviction) otherwise
9  available under the law to the person claiming relief under this
10 section, including any award for consequential and punitive
11 damages.

12

13                        **XIII. CONCLUSION**

14 25. G & K management did not have good cause to evict the
15 Plaintiff from her unit. Federally assisted programs include
16 lease language defining the general standard " good cause to
17 evict" It is clear that G & K management have violated federal
18 regulations that provide protection to tenants who receive
19 federal subsidized  funds for housing assistance.  G & K
20 Management violated the U.S. Department of Housing and Urban
21 Development (HUD) regulated program guidelines for the sole
22 purpose to harass and discriminate.  G & K Management have
23 denied the Plaintiff her rights under the due process of law and
24 her rights to a grievance hearing prior to them initiating  a
25 wrongful evict in state court.  G & K Management intentionally
26 ignored a warning from the US military to stop their illegal
27 practices.  Plaintiffs have suffered a financial hardship in
28 which they have incurred more than $1500.00 in attorneys fee's
   in defending the state court action as well as monies they

borrowed to pay the increased rent in the amount of $4220.00.
Plaintiff has incurred $2000.00 in attorney's fees and cost
defending Defendant's motion to lift the stay. The potential
effect of a landlord's failure to name a known occupant as a
defendant in the complaint is to impose the additional burden on
the court of having to hold a post- judgment hearing on the
"Claim to Right to Possession". Further, if the claim is upheld,
a new trial might have to be held ha could have been avoided had
the occupant been named as a defendant? Because of this
unnecessary burden on the courts, the action of a landlord who
fails to name a known occupant as a defendant might rise to the
level of bad faith for which sanctions could be imposed under
CCP § 128.7. Defendants has clearly violated Plaintiff's civil
and Constitutional rights in invoking a wrongful eviction,
fraud, conversion, discrimination and abuse of process of the
legal process.

### XIV. REQUESTED RELIEF SOUGHT

Hold defendants accountable for the wrongdoing and restore the
Plaintiff's the well deserved placement in society as if this
did not happen including all expenses due, since this court has
Federal Jurisdiction over state court. Plaintiff request that
this court order the Defendants to return all rent monies
Plaintiff has over paid, and to award  for Consequential and
punitive damages  under the provisions of  the Military
Selective Servicemembers  Act (50 U.S.C. App. 451 sec.2) and
under the Constitution of the United States. Award for attorney
fees and actual cost.

WHEREFORE, Plaintiff respectfully request this Court grant her
attorney's fees and cost for legal research and preparing this

1  motion to file. Plaintiff has spent hours and should be granted
2  an award of attorney's fees at a rate of $150.00 per hour and/or
3  in the alternative an award for those fees set at a reasonable
4  rate that this Court may determine.  Plaintiff also seeks
5  injunctive relief that this court has the inherent power to
6  grant in the matter that the court has federal jurisdiction over
7  any other relief that this Court may deem as proper.
8
9  I declare under the laws of this state and under the penalty of
10 perjury that the foregoing is true and correct.
11
12 Dated this 12th day of January 2012
13
14
15   Karen Purvis
16 In Pro Se
17
18                                      POA
19 Abdirahman Guleed, Specialist U.S. Army
20 (POA)
21
22
23 Dated this 12th day of January 2012
24 In Pro Se
25
26
27
28


                    CIVIL COMPLAINT- 20