UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAREN P., et al.,

           Plaintiffs,

    v.

TERMAN ASSOCIATES, et al.,

           Defendants.

Case No.  12-cv-00256-JST

**ORDER RE: MOTIONS TO DISMISS; MOTION TO STAY**

Re: ECF Nos. 22, 30, 53, 69

Three motions are pending in this action for housing discrimination and related claims. First, Defendants Terman Associates ("Terman") and Goldrich & Kest Industries ("Goldrich") move to stay this action pending the resolution of a related unlawful detainer action.  ECF No. 53. Second, Terman and Goldrich move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint for failure to state a claim, or alternatively, they move under Rule 12(e) for a more definite statement.[1]  ECF Nos. 22, 30.  Third, Defendant United States Department of Housing and Urban Development ("HUD") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' claims against it and its officials for failure to state a claim.

For the reasons set forth below, Terman and Goldrich's Motion to Stay is DENIED AS MOOT; Terman and Goldrich's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART; and HUD's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.

//

---

[1] Defendant Terman Associates states in its Motion to Dismiss that it was sued erroneously as "Terman Apartments."  ECF No. 22 at 1.

United States District Court
Northern District of California

# I.   BACKGROUND

**A.   Plaintiffs' Claims**[2]

Plaintiffs Karen P., Abdirahman Guleed, and R.P., all of whom are appearing pro se, are former tenants of Terman Apartments, a housing complex run by Defendants Terman and Goldrich.  Compl. ¶¶ 4, 6, ECF No. 10.  Guleed and R.P. are sons of P.  Id. ¶ 6.  Plaintiffs lived in a federally subsidized unit in Terman Apartments for 23 years until Terman and Goldrich evicted them.  Id.

P. added Guleed to the lease as co-head of household when he turned 18 years old.  Id. ¶¶ 7, 8.  When Guleed enlisted in the United States military on June 9, 2007, he notified Goldrich's property manager, Tatyana Mendyuk, of this development.  Id. ¶ 8.  Mendyuk "illegally removed" Guleed from the lease in 2008 when Guleed returned to active military duty after a brief recess in his training.  Id.

Plaintiffs allege that, in 2009, Mendyuk and Goldrich harassed them over the course of several months by sending them multiple notices stating that Plaintiffs were required either to move into a smaller unit or to pay market-rate rent because of a change in Plaintiffs' family composition ("notices").  Id. ¶ 10. Plaintiffs allege that these notices violated HUD guidelines because they gave them only seven days to move, as opposed to 30 days.  Id. ¶ 10.  Plaintiffs allege that P. responded to these notices by notifying Goldrich that her family composition had not changed.  Id.  After trying repeatedly to meet with Mendyuk to discuss the notices without success, P. finally met with Mendyuk and told her that another tenant of the building who had received a similar notice had been allowed to stay in her apartment because the apartment had a washer and dryer.  Id.  Mendyuk allegedly became angry and asked P. to leave her office immediately.  Id.

---

[2] The Court notes that the complaint cites to various exhibits that were not actually filed. The complaint also contains long passages that appear to have been copied and pasted from the United States Code and the Code of Federal Regulations, and it makes passing references to many laws that do not appear to form the basis of any claim for relief.  Finally, the allegations in the complaint refer to "Plaintiff" without specifying whether the allegations pertain to P., Guleed, or R.P.

United States District Court
Northern District of California

After receiving a few more notices, P. contacted her son and the "Attorney of the U.S. Coast Guard," the latter of whom advised P. that Defendants' actions violated the Servicemembers Civil Relief Act ("SCRA") and sent a letter to HUD and Goldrich on July 2, 2009, stating that their actions were unlawful under the SCRA.  Id.

Plaintiffs paid market-rate rent of $2,119 and $2,102 in June and July of 2009, which imposed a severe financial hardship on them and required them to borrow money from friends.  Id. ¶ 11.  On the advice of the military, Plaintiffs paid Goldrich $220 per month for rent from August 2009 to April 2010, but Goldrich returned all of Plaintiffs' checks uncashed.  Id.

P. hired an attorney in September 2009 who engaged in negotiations with Terman and Goldrich to move Plaintiffs into a smaller unit, but the negotiations "broke down" because Goldrich was unwilling to provide P. with reasonable accommodations for her disability.  Id. ¶ 11 Plaintiffs allege that they provided Goldrich with documentation of P.' disabilities on three separate occasions in 2009.  Id.

Plaintiffs initiated an action with HUD against Goldrich for violations of HUD's guidelines.  Id. ¶ 12.

Terman and Goldrich initiated an unlawful detainer action in state court that resulted in Plaintiffs' eviction.  Id. ¶ 11.  The details of the unlawful detainer action are discussed below.

Plaintiffs bring seven claims against Defendants Terman, Goldrich, and HUD: (1) housing discrimination in violation of the Fair Housing Amendments Act ("FHAA"), (2) violations of the Servicemembers Civil Relief Act ("SCRA"), (3) "assault and battery on a minor," (4) defamation, (5) negligence, (6) "long time exposure to mold and sevier [sic] gas leak," and (7) intentional infliction of emotional distress.[3]

---

[3] It is difficult for the Court to discern the nature of Plaintiffs' claims because of the vagueness of Plaintiffs' allegations.  Plaintiffs make passing references to various laws throughout the complaint without stating explicitly whether Plaintiffs intend to assert claims under those laws. See, e.g., Compl. ¶ 5 (alleging that Plaintiffs are seeking "justice that is protected by the Civil Rights Act, [t]he United States Constitution, [t]he Ralph Civil Rights Act – Bane Civil Rights Act (civil code 52.1), [t]he Fair Housing Act, California State Constitution 'protected citizens' 'federal statutes' 14th amendment, Acts; URICH, other disability and housing Acts").  The Court assumes that the only causes of action that Plaintiffs intend to assert are the seven listed in section IV of the complaint, which is titled "Causes of Action."  See id. at 3.

**B.      Unlawful Detainer Proceedings in State Court**

Terman initiated an unlawful detainer action against P. in Santa Clara County Superior Court ("the unlawful detainer action") on September 4, 2009, on the basis of nonpayment of rent. See Request for Judicial Notice ("RJN"), Ex. 1, ECF No. 54.[4]  Terman alleged in the complaint that P.'s rent was "increased to [the] market rent of $2,018.00 per month [e]ffective 06/01/2009 due to [P.'s] failure to transfer [to] a smaller unit as required per HUD regulations." Id. at 2.

In her amended answer, P. asserted a number of affirmative defenses, including: (1) that the notices to pay rent or quit were defective and violated HUD regulations; and (2) that Terman discriminated against P. based on her race, national origin, family status, gender, having children, and by refusing to grant her request for a reasonable accommodation.  RJN, Ex. 6.  P. subsequently filed a second amended answer to clarify that she was asserting disability discrimination as a defense.  RJN, Ex. 28, 30.

P., through her attorney, sought to have the unlawful detainer action stayed under the SCRA.  RJN, Ex. 8-10.  P. argued that Guleed was on active duty in Afghanistan and that he wished to "assert his right to . . . tenancy."  RJN, Ex. 8 at 1.  P. further argued that it was Guleed's "removal from the lease by [Terman that] led… to" the unlawful detainer action.  Id.  The court stated that it "[would] not consider" P.'s request for a stay under the SCRA because Guleed was "not a named defendant" in the unlawful detainer action.  RJN, Ex. 12.

P. raised the SCRA issue again in her pre-trial statement of the case.  RJN, Ex. 23.  P. argued that "[s]he has struggled with [Terman] for two years to keep her adult son on the lease as part of the household" while he was serving in Afghanistan, and that she "believed that the [SCRA] allowed him to be a continuing part of the household, even though he was serving his country overseas."  Id. at 1.  P. also raised issues relating to her disability discrimination defense. Specifically, P. stated that she would "testify as to her mental disabilities, and that she requested

---

[4] The Court takes judicial notice of the documents filed in state court with respect to the unlawful detainer action on the basis that the documents are referenced in the complaint and no party questions their authenticity.  See In re Silicon Graphics Inc. Securities Lit., 183 F.3d 970, 986 (9th Cir. 1999) (internal quotation marks and citation omitted).

United States District Court
Northern District of California

1    from [Terman] a reasonable accommodation under federal and state Fair Housing laws, which was

2    illegally and improperly refused by [Terman]." Id. P. further stated that such a refusal constituted

3    an act of discrimination. Id.

4         Terman filed a motion in limine to exclude P.'s disability defense on the basis that such

5    defense was "not relevant in a non-payment of rent case since it would not relate to the issue of

6    possession." RJN, Ex. 24 at 2.

7         Trial was held on December 23, 2009. RJN, Ex. 37. The court found that: (1) P. was

8    given proper notice of the rent increase; and (2) "[t]he defenses of retaliation and

9    discrimination . . . [were] not proper defenses because Defendant was already in default of rent

10   payments." Id. at 1-2. The court entered judgment in favor of Terman on January 12, 2010, and

11   issued a writ of execution for possession of the premises so that Terman could recover possession

12   of the apartment occupied by Plaintiffs. Id.

13        P. moved to stay the enforcement of the court's judgment and to quash the writ of

14   attachment on the basis that the unlawful detainer complaint was substantively and procedurally

15   deficient. RJN, Ex. 38-41. Guleed then moved to assert a claim of right to possession of the

16   apartment on the basis that, because he was on military service during the unlawful detainer

17   action, the court should not have entered a judgment against him and should have stayed the action

18   at his request under the SCRA. RJN, Ex. 43. He also argued that his removal from the lease

19   while he was on military service violated his rights under the SCRA. See id. at 2. The court

20   denied P.'s motion to stay the enforcement of the judgment and Guleed's motion to assert a claim

21   of right to possession without providing any reasoning. RJN, Ex. 47. The minutes issued by the

22   court, however, state that the "matter [was] heard and argued." Id.

23        P. filed an appeal of the unlawful detainer action on February 8, 2010. RJN, Ex. 50. Both

24   P. and Guleed filed a second notice of appeal on March 5, 2010. RJN, Ex. 54. Plaintiffs' primary

25   claim on appeal was that the trial court erred by failing to consider their SCRA defenses. RJN,

26   Ex. 60 at 6. The appeal was stayed pending the resolution of a separate bankruptcy action that P.

27   filed in the United States Bankruptcy Court for the District Court for the Northern District of

28   California on February 5, 2010. RJN, Ex. 55, 63. The stay was lifted on October 12, 2012, after

United States District Court
Northern District of California

the bankruptcy case was dismissed.  RJN, Ex. 67.  The Appellate Division of the Santa Clara

County Superior Court dismissed the appeal involuntarily on January 25, 2013, for failure to

procure the record.  RJN, Ex. 70, ECF No. 85.  This involuntary dismissal became final on

February 24, 2013.[5]

**C.      Jurisdiction**

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

## II.      DISCUSSION

**A.      Terman and Goldrich's Motion to Stay**

Before the appeal of the unlawful detainer action was dismissed involuntarily, Defendants

Terman and Goldrich moved to stay this action pending the final resolution of the unlawful

detainer action on the basis that that action bars each of the claims in the complaint based on res

judicata.  ECF No. 53.

Because the dismissal of the appeal of the unlawful detainer action is now final, the

unlawful detainer action is fully resolved.  Accordingly, Terman and Golrich's Motion to Stay is

DENIED AS MOOT.

**B.      Terman and Goldrich's Motion to Dismiss**

Terman and Goldrich move to dismiss the complaint on the basis that each of the claims in

the complaint is barred by res judicata.  Alternatively, Defendants move to dismiss Plaintiffs'

claims on the ground that Plaintiffs fail to state a claim upon which relief can be granted.  Finally,

Defendants move for a more definite statement in the event that the Court declines to dismiss

Plaintiffs' claims.  The Court addresses each of these issues in turn.

### 1.      Res Judicata

When determining whether a judgment by a California court has a res judicata effect, the

Full Faith and Credit Act requires a federal court to apply the res judicata law of California to that

judgment.  See Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988) (holding that the Full

United States District Court
Northern District of California

---

[5] See Cal. Rule of Court § 8.888 (providing that unless the appellate division modifies an order dismissing an appeal involuntarily, an "appellate division decision, including an order dismissing an appeal involuntarily, is final 30 days after the decision is filed").

1   Faith and Credit Act "requires federal courts to apply the res judicata rules of a particular state to

2   judgments issued by courts of that state").

3          "The application of claim preclusion in California focuses on three questions: (1) was the

4   previous adjudication on the merits, (2) was it final, and (3) does the current dispute involve the

5   same claim or cause of action?"  Id. at 324.  In determining whether a claim or cause of action is

6   the same, California courts look to the primary rights theory, in which "the violation of a single

7   primary right gives rise to but a single cause of action."  San Diego Police Officers' Ass'n v. San

8   Diego City Employees' Retirement, 568 F.3d 725, 734 (9th Cir. 2009) (citation and internal

9   quotation marks omitted).  "What is critical to the [primary rights] analysis is the harm suffered;

10  that the same facts are involved in both suits is not conclusive."  Id. (citation and internal

11  quotation marks omitted).  Under the primary rights theory, claim preclusion will apply regardless

12  of whether a particular cause of action was actually litigated, so long as the party against whom

13  claim preclusion is asserted "had the opportunity" to litigate the claim in the prior action.  Weikel

14  v. TCW Realty Fund II Holding Co., 55 Cal. App. 4th 1234, 1245 (1997).  "The burden of proving

15  that the requirements for application of res judicata have been met is upon the party seeking to

16  assert it as a bar or estoppel."  Vella v. Hudgins, 20 Cal. 3d 251, 257 (1977).

17         Defendants argue that each of the claims in the complaint is barred by the unlawful

18  detainer action on the basis of res judicata.  Because unlawful detainer action has been finally

19  decided on the merits, the viability of Defendants' argument depends on whether each of the

20  claims in the complaint involves the same primary right that was at stake in the unlawful detainer

21  action, namely "the right to possession" of the apartment.  See Zimmerman v. Stotter, 160 Cal.

22  App. 3d 1067, 1074 (1984).

23                    **a.        Plaintiffs' SCRA Claims Are Barred**

24         Plaintiffs' claims under the SCRA are barred by res judicata because such claims involve

25  Plaintiffs' right to possession of the apartment, which is the right that was litigated and finally

26  decided on the merits in the unlawful detainer action.

27         The SCRA was enacted "to protect those [servicemembers] who have been obliged to drop

28  their own affairs to take up the burdens of the nation" from exposure to personal liability without

United States District Court
Northern District of California

7

first having an opportunity to appear and defend themselves in person or through counsel.  See

Boone v. Lightner, 319 U.S. 561, 575 (1943).  One of the purposes of the SCRA is "to provide for

the temporary suspension of judicial and administrative proceedings and transactions that may

adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. App.

§ 502(2).  The SCRA allows a servicemember on military duty to move to stay any judicial or

administrative proceeding initiated against him or to move to stay the execution of any judgment

entered against him.  See 50 U.S.C. App. §§ 522, 524.  The SCRA also prescribes the

circumstances in which a servicemember or his dependents may be evicted from a home.  See 50

U.S.C. App. § 531 (providing that a landlord may not evict a servicemember or his dependents

during a period of military service without a court order).

Plaintiffs invoked the SCRA in the unlawful detainer action as a vehicle to assert their

right to possession of the apartment (1) by moving under the SCRA for a stay of the action before

judgment was entered, and (2) by moving under the SCRA to assert their right to possession after

judgment was entered on the basis that the trial court's entry of judgment while Guleed was on

military duty was voidable because the SCRA prohibited Defendants from removing Guleed from

the lease and evicting Plaintiffs while he was on military duty, and because the trial court failed to

stay the unlawful detainer action or to appoint an attorney for Guleed under the SCRA.  RJN, Ex.

38-41, 43.  The record shows that the court considered but ultimately rejected Plaintiffs' SCRA

claims.  RJN, Ex. 38-41, 43, 47.

Here, Plaintiffs' claims under the SCRA are materially the same as the ones they presented

in the unlawful detainer action.  Plaintiffs allege that Goldrich violated the SCRA by removing

Guleed from the lease and evicting Plaintiffs and by "intentionally ignor[ing] a warning from the

U.S. military to stop [its] illegal practices."  Compl. ¶¶ 22-23, 25.  These allegations bear directly

on Plaintiffs' right to possession of the apartment.  Because Plaintiffs already litigated their right

to possession of the apartment in the unlawful detainer action, Plaintiffs are barred from

relitigating that right here.  Accordingly, Terman and Goldrich's motion to dismiss Plaintiffs'

SCRA claims is GRANTED.  These claims are dismissed with prejudice.

/ / /

1

              **b.**        **The Rest of Plaintiffs' Claims Are Not Barred**

2

       Res judicata does not bar Plaintiffs' claims for disability discrimination under the FHAA,

3

assault and battery on a minor, defamation of character, negligence, "long time exposure to mold

4

and sevier [sic] gas leak," or intentional infliction of emotional distress.  None of these claims

5

bears directly upon Plaintiffs' right to possession of the apartment, and therefore, Plaintiffs did not

6

have the opportunity to litigate them in the unlawful detainer action.  Accordingly, Terman and

7

Goldrich's motion to dismiss these claims on the basis of res judicata is DENIED.

8

       "[O]rdinarily, only claims bearing directly upon the right of immediate possession are

9

cognizable" in unlawful detainer actions.  <u>Vella v. Hudgins</u>, 20 Cal. 3d 251, 255 (Cal. 1977).

10

"[C]ross-complaints and affirmative defenses, legal or equitable, are permissible only insofar as

11

they would, if successful, preclude the removal of the tenant from the premises."  <u>Id.</u> (citation and

12

internal quotation marks omitted).

13

       In the unlawful detainer action, P. raised the defense of disability discrimination, but the

14

court held that such a defense was not appropriate because P. "was already in default of rent

15

payments."  RJN, Ex. 37 at 1.  It appears that the court concluded that P.'s disability

16

discrimination claim did not bear directly upon her right to possession of the apartment.

17

       Likewise, Plaintiffs' claims for assault and battery on a minor, defamation of character,

18

negligence, "long time exposure to mold and sevier [sic] gas leak," and intentional infliction of

19

emotional distress also are not precluded by res judicata.  Plaintiffs did not and could not have

20

raised these claims in the unlawful detainer action because they do not bear directly upon

21

Plaintiffs' right to possession of the apartment.

22

      **2.**        **Failure to State a Claim**

23

       The Court now considers whether Plaintiffs have pleaded sufficient facts to state a claim

24

with respect to each of the surviving causes of action.

25

          **a.**        **Legal Standard**

26

       A pleading must contain a "short and plain statement of the claim showing that the pleader

27

is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to dismiss under Federal Rule of Civil

28

Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  <u>Navarro v. Block</u>,

United States District Court
Northern District of California

250 F.3d 729, 732 (9th Cir.2001).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  When dismissing a complaint, leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment.  Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995).

### b.    Discussion

#### (i)    Discrimination in violation of the FHAA

Plaintiffs allege that Goldrich and Terman discriminated against them on the basis of P.'s disability in violation of the Fair Housing Amendments Act ("FHAA").  Compl. ¶ 14.  Specifically, Plaintiffs allege that P. had reached an agreement with Goldrich to move into a smaller apartment with a washer and dryer, but that ultimately, the negotiations broke down because "G&K management was unwilling to make [r]easonable [a]ccomodations" for P.'s disability.  Id. ¶ 11.

"The FHAA provides that it is unlawful to discriminate against disabled persons in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap" of that buyer or renter.  Giebeler v. M & B Associates, 343 F.3d 1143, 1146 (9th Cir. 2003) (citing 42 U.S.C. § 3604(f)(1)).  "The FHAA's definition of prohibited discrimination encompasses 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'"  Id. (citing 42 U.S.C. § 3604(f)(3)(B)).

"To make out a claim of discrimination based on failure to reasonably accommodate, a plaintiff must demonstrate that (1) he suffers from a handicap as defined by the FHAA; (2) defendants knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary; and (4) defendants refused to make such

accommodation." Id. at 1147 (internal quotation marks omitted).  "The FHAA defines 'handicap' as 'a physical or mental impairment which substantially limits one or more of such person's major life activities.'" Id. (citing 42 U.S.C. § 3602(h)(1)).

Plaintiffs allege that P. suffers from a disability, that P. provided documentation establishing the nature of her disability to Goldrich on multiple occasions, and that Goldrich and Terman refused to provide reasonable accommodations in light of her disability.  Compl. ¶ 11.  Plaintiffs, however, do not allege the nature of P.'s disability or allege any factual matter to raise the reasonable inference that her disability falls within the scope of the FHAA and requires a reasonable accommodation.  Accordingly, Defendants' motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.

In their amended complaint, Plaintiffs must state with specificity the nature of P.'s disability and explain why an accommodation was necessary.  See Giebeler, 343 F.3d at 1155 ("To prove that an accommodation is necessary, [p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.").

### (ii)    Assault and Battery of a Minor

Under California law, assault is "[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Cal. Penal Code § 240.  An assault does not require physical injury; it requires only the creation of a reasonable apprehension of imminent harmful touching.  See Kiseskey v. Carpenters' Trust for So. Cal., 144 Cal. App. 3d 222, 232 (Cal. Ct. App. 1983).

A person commits battery under California law when he or she "(1) intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff."  Piedra v. Dugan, 21 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2004).

Here, Plaintiffs have not alleged any facts that would raise the reasonable inference that a minor was the victim of either assault or battery.  Accordingly, Terman and Goldrich's motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.

United States District Court
Northern District of California

### (iii)     Defamation

Under California law, a plaintiff asserting a claim for defamation must plead facts showing "the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." Smith v. Maldonado, 85 Cal. Rptr. 2d 397, 403 (Cal. Ct. App. 1999) (citing Cal. Civ. Code §§ 45 (defining libel), 46 (defining slander)).

Here, Plaintiffs have not alleged facts to establish any of the elements of a defamation claim. Accordingly, Terman and Goldrich's motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.

### (iv)     Negligence

To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." Ileto v. Glock Inc., 349 F.3d 1191, 1203 (9th Cir. 2003) (citation omitted).

Here, Plaintiffs do not allege any facts to establish any of the elements of a negligence claim. Accordingly, Terman and Goldrich's motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.

### (v)     Exposure to Mold or Gas

Plaintiffs bring a claim for "long time exposure to mold and [severe] gas leak." Compl. at 3. Plaintiffs do not allege facts to raise the reasonable inference that they were exposed to mold or gas or that any such exposure would be actionable under federal or California law. Accordingly, Terman and Goldrich's motion to dismiss this claim is GRANTED WITH LEAVE TO AMEND.

### (vi)     Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 185 Cal. Rptr. 252, 259 (Cal. 1982). "Conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.

1    Here, Plaintiffs have not alleged facts to raise the reasonable inference that any of the

2    Defendants engaged in conduct that exceeded all bounds usually tolerated in a civilized

3    community with the intention of causing Plaintiffs to suffer severe emotional distress.

4    Accordingly, Terman and Goldrich's motion to dismiss this claim is GRANTED WITH LEAVE

5    TO AMEND.

6    **C.     HUD's Motion to Dismiss**

7    HUD moves to dismiss Plaintiffs' claims against HUD and HUD employee Thomas

8    Azumbrado on the basis that Plaintiffs fail to state a claim for relief.[6]  HUD notes that the

9    complaint contains only one allegation pertaining to HUD, which is that "HUD and G&K

10   Management were in violation of the Service Members Civil Relief Act."  Compl. ¶ 10.  HUD

11   argues that this allegation is insufficient to raise the reasonable inference that HUD or its officials

12   are liable for any misconduct.

13   The Court agrees.  Plaintiffs' single allegation against HUD is conclusory and therefore

14   insufficient to state a claim for relief upon which relief can be granted.  See Iqbal, 556 U.S. at 678

15   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

16   statements, do not suffice.") (citation and internal quotation marks omitted); see also Section

17   B.2.(a) supra.  Accordingly, HUD's motion to dismiss Plaintiffs' claims against it and its officials

18   is GRANTED WITH LEAVE TO AMEND.[7]

19   In their opposition to HUD's Motion, Plaintiffs state that they bring claims against HUD

20   and its officials under the Federal Tort Claims Act ("FTCA"); the Fair Housing Act ("FHA"); the

21   Civil Rights Act, 42 U.S.C. § 1985; the First, Fifth, and Fourteenth Amendments; and the SCRA.

22   To the extent that Plaintiffs will seek to assert any of these claims against HUD in their amended

23   complaint, Plaintiffs must plead facts showing that the United States has unequivocally waived its

24   sovereign immunity with respect to each of the claims asserted.  Holloman v. Watt, 708 F.2d

25

26   ───────────────────────

27   [6] HUD states in its Motion to Dismiss that Plaintiffs have not met their burden to establish
     effective service of process on HUD, but HUD does not move to dismiss Plaintiffs' claims on this
     basis at this time because the claims are deficient under Rule 12(b)(6).

28   [7] Plaintiffs voluntarily dismissed Defendant Thomas Azumbrado, a HUD official, from this action
     without prejudice on December 5, 2012.  ECF No. 62.

United States District Court
Northern District of California

1399, 1401 (9th Cir. 1983) (citation omitted).  Neither the FHA nor the SCRA contain express waivers of sovereign immunity.

If Plaintiffs choose to bring a claim against HUD under the FTCA, Plaintiffs must plead facts showing that they exhausted their administrative remedies prior to filing suit in federal court. See 28 U.S.C. § 2675(a) ("An action shall not be instituted upon a claim against the United States for money damages for the injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . ."); 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . ."); Burns v. United States, 764 F.2d 722, 724 (9th Cir. 1985) ("The claim requirement of section 2675 is jurisdictional in nature and may not be waived.").

If Plaintiffs assert a claim against a HUD official for violations of their constitutional rights, Plaintiffs must allege facts showing that the actions of the official are not protected by qualified immunity.  See Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.") (citation omitted).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CONCLUSION

(1) Terman and Goldrich's Motion to Dismiss Plaintiffs' SCRA claims on the basis of res judicata is GRANTED; such claims are dismissed with prejudice.  Terman and Goldrich's Motion to Dismiss the remaining claims on the basis of res judicata is DENIED.

(2) Terman and Goldrich's Motion to Dismiss the remaining claims for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

(3) HUD's Motion to Dismiss any claims asserted against it and its officials for failure to state a claim is GRANTED WITH LEAVE TO AMEND.

Plaintiffs may file an amended complaint addressing the deficiencies identified in this Order within 30 days of the date this order is filed.  This action will be dismissed with prejudice if Plaintiffs do not file an amended complaint within this time frame.

Any amended complaint must make clear which causes of action are alleged against which Defendants.  Plaintiffs are advised that a failure to attribute allegations and causes of actions to particular defendants can result in dismissal.  The Court also notes that the Complaint refers almost exclusively to "Plaintiff."  See, e.g., Comp. ¶¶ 10, 11.  The amended complaint must make clear whether its allegations pertain to P., Guleed, R.P., or some combination of them.

Plaintiffs are encouraged to seek the assistance of the Legal Help Center in amending their complaint.  The Legal Help Center provides help to any litigant who is representing herself in a civil lawsuit in the San Francisco or Oakland divisions of the United States District Court for the Northern District of California.  The Legal Help Center is located at 450 Golden Gate Avenue, 15th Floor, Room 2796, San Francisco, California.  Assistance is provided by appointment only. A litigant may schedule an appointment by signing up in the appointment book located on the table outside the door of the Center or by calling the Legal Help Center appointment line at 415-782-9000, extension 8657.

**IT IS SO ORDERED**.

Dated:  May 17, 2013

_____
JON S. TIGAR
United States District Judge